UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 21-136-DCR-4 |
| V. | ) ) | |
| RUDY GUERRERO, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Rudy Guerrero is charged with conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h). [Record No. 1] A jury trial is scheduled to begin on Tuesday, June 21, 2022. [Record No. 66] However, Guerrero has filed a motion to transfer venue to the Northern District of Illinois. He contends that venue is not proper in this district because he did not take any action in furtherance of the conspiracy in the Eastern District of Kentucky. [Record No. 73] The government opposes the motion. [Record No. 78]

Venue for criminal trials is proper in the state and district where the offense is committed. U.S. Const. art. III § 2, cl. 3; Fed. R. Crim. P. 18. And venue may be appropriate in more than one district. *United States v. Beddow*, 957 F.2d 1330, 1335 (6th Cir. 1992). Title 18 of the United States Code, Section § 1956, includes a specific venue provision for money laundering conspiracies. Section 1956(i)(2) provides that "[a] prosecution for an attempt or conspiracy offense under this section or section 1957 may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where

an act in furtherance of the attempt or conspiracy took place." Paragraph 1 of § 1956(i) (which applies to substantive money laundering offenses) states:

> Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in--
> (A)   any district in which the financial or monetary transaction is conducted; or
> (B)   any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.

"[W]here a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999) (quoting *United States v. Lombardo*, 241 U.S. 73 (1916)). In a prosecution for a money laundering conspiracy, venue is proper in any district where a co-conspirator takes an action in furtherance of the conspiracy. *Rodriguez-Moreno*, 526 U.S. at 281-82 (citing *Hyde v. United States*, 225 U.S. 347, 356-67 (1912)); *United States v. Myers*, 854 F.3d 341, 354 (6th Cir. 2014) ("[The] Court has long held that venue is proper in any district in which an overt act in furtherance of the conspiracy was committed, even where an overt act is not a required element of the conspiracy offense." (citation omitted)); *see also United States v. Jordan*, 511 F. App'x 554, 566 (6th Cir. 2013) (holding that venue was proper in a district when the defendant's co-conspirators committed acts in furtherance of the conspiracy in the district even though the defendant never committed an act within the district).

In *United States v. Ologeanu*, the Court concluded that the United States proffered sufficient evidence to survive a pre-trial venue challenge. Criminal Action No. 5: 18-CR-81-REW-MAS, 2020 U.S. Dist. LEXIS 60698, at *17-20 (E.D. Ky. Apr. 4, 2020). The United States' alleged proof was that there were victims in the district, co-conspirators directed

communications and funds from a confidential source located in the district, funds were converted into Bitcoin in the district, and there was an operative in the district. *Id*. The Court did note that the government avoided dismissal on venue grounds because the allegations included in the indictment are generally accepted as true before trial, but the issue of venue may be addressed at trial if the government's evidence did not support venue in the district. *Id*. at *22.

Guerrero argues in this case that he did not take any action in furtherance of the conspiracy in the Eastern District of Kentucky and, therefore, the case must be transferred to the Northern District of Illinois. However, the United States proffers that: (1) drug proceeds were delivered by Guerrero's co-conspirators to undercover agents in this district; (2) the drug proceeds were deposited in the Lexington DEA's undercover account, converted into Bitcoin, and then disbursed at the direction of the leader of the conspiracy; and (3) the leader of the conspiracy arranged for pick-up of drug proceeds in Lexington, Kentucky, and elsewhere. [Record No. 78]

The factual bases of Guerrero's co-conspirators' plea agreements support the United States' proffer. For example, in Co-Defendant Oscar Palacios Espericueta's plea agreement, the parties agree that "DEA Lexington received a contract to pick up drug proceeds in Lexington, KY for repatriation of those proceeds to Mexico. The request was received from a codefendant herein, who brokered the transaction from Mexico for the collection of drug proceeds in Lexington, KY." [Record No. 89, p. 3] This plea agreement also states that Palacios Espericueta called to arrange delivery of drug proceeds in Lexington, Kentucky, and sent a text message confirming the delivery. [*Id*.] Thereafter,

Espericueta met with an undercover agent at an address in Lexington, Kentucky, to deliver the drug proceeds. [*Id*. at 3-4.] The plea agreement then notes that the proceeds were deposited in a DEA account in Lexington, Kentucky, and then, at the direction of another co-conspirator, they were converted into Bitcoin and transferred to certain cryptocurrency wallets. [*Id*. at 4.] Similarly, in Co-Defendant Carlos Gonzalez's plea agreement, the parties agree that money from a drug proceed delivery "was deposited into an undercover DEA account in the Eastern District of Kentucky (EDKY). Per directions from the broker, the money was laundered by wire transfer from the EDKY using a cryptocurrency exchange (Bitcoin)." [Record No. 91, p. 4]

Venue is proper in the Eastern District of Kentucky based on the government's proffered evidence, which is bolstered by the factual bases included in co-conspirators plea agreements. Similar to *Ologeanu*, the delivery of drug proceeds to one or more undercover agents in this district, the deposit of proceeds into an account in this district, and the conversion of the proceeds into Bitcoin in this district is sufficient to establish venue. 2020 U.S. Dist. LEXIS 60698 at *17-20. Additionally, placing phone calls and sending text messages into the district organizing actions in furtherance of the conspiracy also supports the conclusion that venue is proper. *United States v. Naranjo*, 14 F.3d 145, 147 (2d Cir. 1994) (explaining "phone calls from one district into another can establish venue in the latter district so long as they further the ends of the conspiracy" and it did not matter if the person receiving the call was not a co-conspirator); *see also United States v. Gonzalez*, 683 F.3d 1221, 1225 (9th Cir. 2012); *United States v. Lewis*, 676 F.2d 508, 511 (11th Cir. 1982).

While Guerrero claims that he never entered Kentucky, "conspiracy does not always require the presence of a co-conspirator in the venue." *United States v. Elliott*, 876 F.3d 855, 862 (6th Cir. 2017). Guerrero argues that he only participated in transactions that occurred on May 6, May 8, and May 12, 2020, and these transactions only occurred in the Northern District of Illinois. But this ignores the fact that other actions in furtherance of the conspiracy did take place in the Eastern District of Kentucky and venue is proper in any district where a co-conspirator took an action in furtherance of the conspiracy. *Ologeanu*, 2020 U.S. Dist. LEXIS 60698, at *21 ("[A] conspiracy is like a train. When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's responsibility for the existing freight—or conduct—regardless of whether he is aware of just what it is composed.") (citing *United States v. Baines*, 812 F.2d 41, 42 (1st Cir. 1987)).

Guerrero relies on *United States v. Williams*, 274 F.3d 1079 (6th Cir. 2001), in support his argument that venue is not proper in this district. In *Williams*, the Sixth Circuit concluded that venue was not proper in Michigan because no offense or overt act in furtherance of the conspiracy occurred in that district. There, the only connection to Michigan was a confidential informant who falsely informed the defendant that he planned to sell drugs in Michigan. *Id*. at 1084. But unlike *Williams*, Guerrero's co-conspirators delivered drug proceeds in the Eastern District of Kentucky, proceeds were deposited in accounts in Kentucky, proceeds were then converted to Bitcoin in this district and disbursed, and co-conspirators made telephone calls into the district organizing acts in furtherance of the conspiracy. Guerrero's reliance on *Williams* is misplaced because his co-conspirators did take actions in furtherance of the conspiracy in the Eastern District of Kentucky.

Finally, Guerrero argues that the government's proffered evidence does not show a single conspiracy, but rather the existence of multiple conspiracies. [Record No. 85] He asserts that, because there are multiple conspiracies, the Court cannot use the actions of his co-defendants to establish venue here. The defendant claims that his co-defendants were part of separate conspiracies because he did not know his co-defendants, his actions took place much later than his co-defendants, and the only connection between himself and his co-defendants is the "broker" of the financial transactions. Guerrero raises this argument for the first time in his reply brief. Thus, while ehe Court need not consider arguments raised for the first time in a reply brief, the argument nonetheless fails. *See Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021) ("[E]ven well-developed arguments raised for the first time in a reply brief come too late.").

The Court considers three factors in determining whether a single conspiracy existed: (1) "the existence of a common goal," (2) "the nature of the scheme," and (3) "the overlapping of the participants in various dealings." *United States v. Smith*, 320 F.3d 647, 652 (6th Cir. 2003). As Guerrero notes, "for a wheel conspiracy to exist, those people who form the wheel's spokes must have been aware and must do something in furtherance of some single, illicit purpose." *United States v. Swafford*, 512 F.3d 833, 842 (6th Cir. 2008) (citing *United States v. Chandler*, 388 F.3d 796, 808 (11th Cir. 2004)). Additionally, "while a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy does not know every other member, it is necessary to show that each alleged member agreed to participate in what he [or she] knew to be a collective venture directed toward a common goal." *Swafford,* 512 F.3d at 841.

Here, the co-conspirators plea agreements support the conclusion that this conspiracy is a single wheel conspiracy. The conspiracy's common purpose was to support the drug trafficking activities of one or more organizations by laundering drug proceeds. [Record No. 89, pp. 2-3] All of the co-conspirators were working towards this common goal. [*Id*.; *United States v. Brasher*, 962 F.3d 254, 263 (7th Cir. 2020) (explaining that venue was proper in the Southern District of Indiana even though defendant's activities were confined to Kentucky because other co-conspirators were taking actions in Indiana, and nothing distinguished the nature of their activities and all co-conspirators worked towards a common aim of distributing drugs); *United States v. Perez-Martinez*, 746 F. App'x 468 (6th Cir. 2018) (holding that a single conspiracy existed when one individual recruited other individuals to his operation and directed their activities in support of a common plan).] The nature of the scheme was that individuals received drug proceeds, deposited them at certain financial institutions, and then the proceeds were converted into cybercurrency and transferred out of the accounts.

It was not necessary for Guerrero to know all his co-conspirators. Instead, it was only necessary that they were all working towards a common goal, namely, money laundering in furtherance of drug trafficking activities. *United States v. Beals*, 698 F.3d 248, 259 (6th Cir. 2012) (explaining that co-conspirators do not need to know each of the other co-conspirators or the details of their actions); *cf. United States v. Rodgers*, No. 3:17-cr-0016-GFVT, 2018 U.S. Dist. LEXIS 182093, at *10 (E.D. Ky. Oct. 23, 2018) ("So long as all co-conspirators had a common goal or enterprise, it is of no consequence that the co-conspirators were only connected by Mr. Rodgers."). Because the factual bases in Guerrero's co-conspirators' plea

agreements demonstrate that there was a common goal, the evidence at this point supports the existence of a single conspiracy and Guerrero's argument fails.[1]

In summary, the government's proffered evidence, supported by the factual bases included in the plea agreements of co-defendants, demonstrates that Guerrero's co-conspirators took actions in furtherance of a single conspiracy in this district. And venue is proper in any district where a co-conspirator took an action in furtherance of the conspiracy.

Accordingly, it is hereby

**ORDERED** that Defendant Rudy Guerrero's motion to transfer venue [Record No. 73] is **DENIED**.

Dated: June 9, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

---

[1] "Whether single or multiple conspiracies have been established is usually a question of fact to be resolved by the jury." *United States v. Warman*, 578 F.3d 320, 342 (6th Cir. 2009) (quoting *United States v. Smith*, 320 F.3d 647, 652 (6th Cir. 2003)). Additionally, "venue is a question of fact to be decided by the jury." *United States v. Foy*, 641 F.3d 455, 466 (10th Cir. 2011).